**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES ex rel. IAN ) <br> LOCKHART (#R18787), ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> DAVE REDNOUR,[1] Warden, Menard ) <br> Correctional Center, ) <br> ) <br> Respondent. ) | Case No. 08 C 2374 |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Ian Lockhart's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d).[2] For the following reasons, the Court denies Lockhart's amended habeas petition. Further, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

### **BACKGROUND**

Lockhart does not present clear and convincing evidence challenging the statement of facts in the last state court decisions to address his arguments on the merits, which include the Illinois Appellate Court's opinions on direct and post-conviction appeal, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010). The Court therefore adopts the underlying

---

[1] The Court substitutes Dave Rednour, the current Warden of the Menard Correctional Center where Lockhart is incarcerated, as the Respondent. *See* Fed.R.Civ. P. 25(d).

[2] On April 19, 2011, the Court granted Lockhart's motion for an extension of time to file his reply brief on or before June 1, 2011. To date, Lockhart has failed to file his reply brief.

facts as set forth by the Illinois Appellate Court in *People v. Lockhart,* No. 3-03-0214 (Ill.App.Ct. 2005) (unpublished) and *People v. Lockhart,* No. 3-06-0084 (Ill.App.Ct. 2007) (unpublished).

I.      **Factual Background**

On August 30, 2000, Lockhart, Keith Bland, Jr. ("Keith Jr."), and Christopher Scott, Lockhart's brother-in-law and cousin respectively, visited the residence of Delores and Keith Bland, Sr. ("Keith Sr."). Delores and Keith Sr. were Keith Jr.'s stepmother and father. The Blands lived with their sons, Kory Bland and Kenneth Gordon. Keith Sr. had evicted Keith Jr. from the home over a year before August 2000, therefore, it was unusual for Keith Jr. to stop by unannounced. Keith Jr., Scott, and Lockhart claimed the purpose of their visit was to show Keith Jr.'s Navy discharge papers to Delores. Their actual purpose was to determine the Blands' schedules and whether four guns were still at the residence.

The next day, August 31, 2000, Keith Jr., Scott, and Lockhart returned to the Bland residence to take the guns that were there. While they were in the home, Delores returned. When she asked the men what they were doing there, Scott shot her. Later that evening, Kory Bland returned home and entered the residence through the back door that was ajar. Thereafter, he found the home ransacked and his mother dead on the living room floor. Kory also noticed that three of the four guns were missing, as well as a VCR and TV antenna. The same model TV antenna was later found at the home of Lockhart's wife.

Police Detective Michael Guilfoyle interviewed Lockhart twice – once on the day after Delores Bland's murder and again about three and a half months later. During the second interview, Lockhart changed numerous aspects of his story about what had occurred on the day

2

of the murder. Lockhart, for example, originally told the police detectives that he spent the afternoon of the murder with his wife at his mother-in-law's home, but at the second interview he told police that he went to his mother-in-law's home in the morning to obtain money to purchase a birthday gift for his wife – a used VCR and TV antenna – and then spent the rest of the afternoon and evening at his wife's home. Also, Lockhart gave Detective Guilfoyle different dates for the purchase of both the VCR and TV antenna and claimed that he purchased the VCR on the street, but got rid of it a few days later because he thought the police would check the serial number. Also, Lockhart initially told Detective Guilfoyle that he wrapped his wife's birthday presents, but later stated that he set up the VCR and TV antenna for her to use on her birthday. Meanwhile, Lockhart implicated Scott and Keith Jr. in Delores Bland's murder

At Lockhart's trial, Lockhart's cell-mate Jason Smith testified that he and Lockhart discussed Lockhart's involvement in Delores Bland's murder. Lockhart told Smith that he, Keith Jr., and Scott went to the Blands' home to steal the guns intending to make the theft appear to be a residential burglary by ransacking the home and stealing other items. Lockhart told Smith that they needed the guns because they were robbing people for drugs and money. He also told Smith that he took the Blands' VCR and TV antenna to make it look like a residential burglary and then gave them to his wife as a birthday gift.

At trial, the State also offered the prior testimony of Victor McClendon from Keith Jr.'s trial, as well as McClendon's recorded statement made to the Will County police. To clarify, at Keith Jr.'s trial, McClendon testified that in early September 2000, Lockhart and Keith Jr. approached him in Chicago and asked him if he wanted to purchase a handgun and shotgun. At Lockhart's trial, however, McClendon could not remember any details about Lockhart trying to

3

sell him guns. Although he recalled testifying at Keith Jr.'s trial in May 2002, McClendon said he could not recall any specific details or the events about which he testified. During an offer of proof at Lockhart's trial, McClendon stated that he had previously testified against Keith Jr., but when the State asked him the same questions that he had answered at that trial, McClendon testified that he could not recall talking with Lockhart after the murder or the substance of his prior testimony. McClendon also testified that he was not going to answer any further questions.

The State then presented an offer of proof regarding McClendon's prior videotaped statement made to Will County police detectives. After the videotape was played in an effort to refresh McClendon's recollection, McClendon admitted that he recognized himself in the tape, but did not remember making the tape or the substance of his statements on the tape. The jury was then brought back into the courtroom and McClendon testified that he admitted that he had previously testified under oath in May 2002. He also testified that he could not recall various statements regarding a conversation he had with Lockhart in September 2000 about buying guns. Also, he testified that he could not remember the events about which he had testified.

Thereafter, a transcript of McClendon's prior testimony was then read to the jury. The transcript established that McClendon had testified that Lockhart and Keith Jr. approached him and attempted to sell him guns. The State also played McClendon's videotaped statement. On the tape, McClendon stated that Lockhart told him that he was with Scott and Keith Jr. when Scott killed Delores Bland and that they had gone to the Blands' house to steal guns.

## II. Procedural Background

Following a 2002 trial in Will County, Illinois, a jury convicted Lockhart of first degree murder, armed robbery, and residential burglary. On March 13, 2003, the trial court merged the

4

residential burglary count into a felony murder charge and sentenced Lockhart to terms of forty-one years for murder and sixteen years for armed robbery – to be served consecutively.

Lockhart filed a timely notice of appeal on March 14, 2003 in which he appealed his convictions to the Illinois Appellate Court bringing the following claims: (1) the trial court improperly admitted into evidence the prior statements and testimony of Victor McClendon in violation of 725 ILCS 5/115-10.2 because McClendon was not available for cross-examination as required by that statute; (2) the trial court failed to adequately inquire into Lockhart's claims that he was denied effective assistance of counsel during pretrial proceedings; and (3) the trial court abused its discretion in sentencing Lockhart to consecutive prison terms of forty-one and sixteen years' imprisonment. The Illinois Appellate Court affirmed Lockhart's convictions on March 14, 2005.

Lockhart, through counsel, then filed a petition for leave to appeal ("PLA") in the Supreme Court of Illinois in which he claimed that the trial court improperly admitted McClendon's testimony under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004),[3] because McClendon did not appear for cross-examination. The Supreme Court of Illinois denied Lockhart's PLA on May 25, 2005. Lockhart did not file a petition for a writ of certiorari in the United States Supreme Court.

On November 17, 2005, Lockhart filed a pro se post-conviction petition pursuant to 725 ILCS 5/122-1, *et seq.,* in the Circuit Court of Will County. Lockhart brought the following claims in his post-conviction petition: (1) he was denied due process because the State

---

[3] The Supreme Court decided *Crawford* on March 8, 2004, during the pendency of Lockhart's direct appeal. In fact, Lockhart addressed the *Crawford* decision in his reply brief filed on August 9, 2004.

knowingly

used false information to suggest his motive for committing the crimes; (2) he was denied due process because he was required to wear an electronic stun belt during trial pursuant to the Will County Sheriff's Department policy without the trial judge considering whether the belt was necessary; (3) his trial counsel was constitutionally ineffective for failing to object to the stun belt; (4) appellate counsel was constitutionally ineffective for failing to raise on direct appeal that he was denied a fair trial due to (a) the State's improper comments during closing arguments, including comments that McClendon and Lockhart were friends and that McClendon had no mental health issues; (b) the cumulative effect of the prosecutor's improper comments, (c) the trial court's failure to instruct the jury to disregard Lockhart's courtroom behavior during the testimony of the government's witnesses, and (d) the State's failure to correct McClendon's statement that his testimony was not pursuant to an agreement with the prosecution; and (5) appellate counsel was ineffective for failing to raise on direct appeal the claim that trial counsel was ineffective for failing to investigate evidence that might have impeached the State's witness or that might have rebutted the State's theory regarding Lockhart's motive. On January 9, 2006, the trial court dismissed Lockhart's pro se post-conviction petition as frivolous and patently without merit. *See* 725 ILCS 5/122-2.1.

Lockhart, represented by counsel, then appealed the dismissal of his post-conviction petition raising the following claims to the Illinois Appellate Court: (1) he was denied due process because he was required to wear an electronic stun belt during the trial pursuant to the Will County Sheriff's Department policy without the trial judge considering whether the belt was necessary; and (2) trial counsel was ineffective for failing to object to the stun belt. The

6

Illinois Appellate Court affirmed the dismissal of Lockhart's post-conviction petition on September 17, 2007. Thereafter, Lockhart filed a pro se motion for substitution of appellate counsel asserting that his post-conviction appellate counsel refused to present certain claims raised in his pro se post-conviction petition. The Illinois Appellate Court denied Lockhart's motion on March 26, 2007.

Lockhart, by counsel, then filed a PLA to the Supreme Court of Illinois setting forth the following claims: (1) he was denied due process because he was required to wear an electronic stun belt during the trial pursuant to the Will County Sheriff's Department policy without the trial judge considering whether the belt was necessary; and (2) his trial counsel was ineffective for failing to object to the stun belt. The Supreme Court of Illinois denied Lockhart's PLA on November 27, 2007.

On April 25, 2008, Lockhart filed his original pro se petition for a writ of habeas corpus in this matter. On December 12, 2008, Judge Andersen, the presiding judge at that time, granted Lockhart's motion to stay the federal proceedings to allow Lockhart to exhaust a new claim through a successive post-conviction petition in the Illinois courts. In particular, on February 9, 2009, Lockhart filed a motion for leave to file a successive post-conviction petition in the Circuit Court of Will County arguing that he was denied effective assistance of counsel in securing his rights under the Illinois Speedy Trial Act, 725 ILCS 5/103-5(c). The trial court denied Lockhart leave to file a successive petition. Lockhart appealed and his appointed counsel filed a motion for leave to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Lockhart then filed a written objection. Thereafter, the Illinois Appellate Court granted counsel's motion to withdraw and affirmed the trial court's judgment because

7

Lockhart had failed to meet the cause and prejudice test under Illinois law permitting Lockhart to file a successive post-conviction petition. *See* 725 ILCS 5/122-1(f). Lockhart then filed a PLA in the Supreme Court of Illinois claiming that his trial and appellate counsel were constitutionally ineffective for failing to secure his rights under the Illinois Speedy Trial Act, 725 ILCS 5/103-5(c). On November 24, 2010, the Supreme Court of Illinois denied Lockhart's PLA.

### III. Habeas Petition

After the Executive Committee of the Northern District of Illinois reassigned this matter to the Court on October 29, 2010 – due to Judge Andersen's retirement from the bench – the Court granted Lockhart's motion to lift the stay of his habeas petition on January 4, 2011. Lockhart then filed an amended pro se petition for habeas corpus relief on February 23, 2011. Construing his pro se allegations liberally, *see McGee v. Bartow,* 593 F.3d 556, 565-66 (7th Cir. 2010), Lockhart's amended habeas petition includes the following claims: (1) he was denied his rights under the Confrontation Clause; (2) he was denied due process based on the trial court requiring him to wear an electronic stun belt that caused him to not testify in his own defense; (3) his trial counsel was ineffective for failing to object to the requirement that he wear a stun belt; (4) he was denied due process because the State (a) knowingly used false information to suggest his motive for the crimes, (b) suggested that McClendon's memory loss was because he was friends with Lockhart, and (c) suggested that McClendon did not have mental health problems; and (5) appellate counsel was ineffective.

## LEGAL STANDARDS

### I. Habeas Standard

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Brown v. Finnan,* 598 F.3d 416, 421 (7th Cir. 2010). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405; *see also Brown,* 598 F.3d at 421-22.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *Brown,* 598 F.3d at 422. "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable.'" *Bennett v. Gaetz,* 592 F.3d 786, 790 (7th Cir. 2010) (citation omitted); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original); *Wood v. Allen,* 130 S.Ct. 841, 849 (2010) (state court's factual finding not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."). To be considered objectively unreasonable, a state court's decision must be "well

9

outside the boundaries of permissible differences of opinion." *Bennett,* 592 F.3d at 790 (citation omitted). Put differently, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances" of the case. *Williams v. Thurmer,* 561 F.3d 740, 746 (7th Cir. 2009).

## II.    Exhaustion and Procedural Default

Before bringing a habeas claim in federal court, a habeas petitioner must exhaust all remedies available to him in state court. *See Gonzales v. Mize,* 565 F.3d 373, 380 (7th Cir. 2009); 28 U.S.C. § 2254(b)(1)(A). In particular, a habeas petitioner must fully and fairly present his federal claims to the state courts before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Sturgeon v. Chandler,* 552 F.3d 604, 610 (7th Cir. 2009). "A procedural default occurs where a habeas petitioner 'has exhausted his state court remedies without properly asserting his federal claim at each level of state court review.'" *Crockett v. Hulick,* 542 F.3d 1183, 1192 (7th Cir. 2008) (citation omitted). Procedural default precludes federal court review of a petitioner's habeas claims. *See Johnson v. Pollard,* 559 F.3d 746, 752 (7th Cir. 2009).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a habeas petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct.

10

2639, 91 L.Ed.2d 397 (1986); *see also Smith v. McKee,* 598 F.3d 374, 382 (7th Cir. 2010). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496; *see also Smith,* 598 F.3d at 387-88.

## ANALYSIS

I.   **Procedurally Defaulted Claims**

   A.   **Independent and Adequate State Procedural Grounds**

In response to Lockhart's habeas petition, Respondent maintains that Lockhart's claim that the state trial court violated his due process rights by requiring him to wear an electronic stun belt during trial is procedurally defaulted. More specifically, Respondent asserts that the post-conviction Illinois Appellate Court decided this issue on independent and adequate state procedural grounds. To clarify, "[f]ederal habeas corpus relief from a state conviction is not available when the decision rests on a state procedural ground independent of any federal issue and adequate to support the judgment." *Kerr v. Thurmer,* 639 F.3d 315, 321 (7th Cir. 2011).

In making its determination on this issue, the Illinois Appellate Court reviewed this claim for plain error because Lockhart did not object to the alleged error at trial or raise this issue in his post-trial motion. (Ex. I, 9/17/2007, Order, at 6-8.) In doing so, the appellate court concluded that Lockhart did not establish plain error requiring the reversal of the trial court's summary dismissal of his post-conviction petition. (*Id.* at 9.) Because the Illinois court relied upon the procedural bar of waiver to dispose of this claim, the state law ground is independent under the *Kerr* standard. *See Kaczamerk v. Rednour,* 627 F.3d 586, 592 (7th Cir. 2010). The state law ground of waiver is also adequate because waiver is a firmly established procedure and is a

11

regularly followed state practice. *See id.* at 592. Therefore, Lockhart has procedurally defaulted his habeas claim that the trial court violated his due process rights by requiring him to wear an electronic stun belt during trial.

### B. One Complete Round of State Court Review

#### 1. Due Process Claim

Next, Lockhart has procedurally defaulted his claim that the State denied him due process because the State (a) knowingly used false information to suggest his motive for the crimes, (b) suggested that McClendon's memory loss was because he was friends with Lockhart, and (c) suggested that McClendon did not have mental health problems. In particular, Lockhart failed to assert these claims through one complete round of state court review. *See Byers v. Basinger,* 610 F.3d 980, 985 (7th Cir. 2010) (quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). Indeed, although Lockhart brought these claims in his post-conviction petition, he did not appeal them in his post-conviction appeal and did not include them in his post-conviction PLA to the Supreme Court of Illinois. Instead, the only claims he brought in his post-conviction PLA were that he was denied due process because he was required to wear a stun belt during trial and that his trial counsel was constitutionally ineffective for failing to object to the stun belt at trial.

#### 2. Ineffective Assistance of Appellate Counsel

Similarly, Lockhart procedurally defaulted his ineffective assistance of appellate counsel claim. Specifically, Lockhart failed to present his ineffective assistance of appellate counsel claim through one complete round of state court review because he did not bring this claim in his post-conviction appeal or in his post-conviction PLA to the Supreme Court of Illinois. As such,

Lockhart procedurally defaulted these claims barring the Court from reviewing the claim's merits. *See McGee v. Bartow,* 593 F.3d 556, 565 (7th Cir. 2010).

    **C.**    **Exceptions to Procedural Default**

        **1.**    **Cause and Prejudice**

A claim of ineffective assistance of counsel can establish cause for procedural default. *See Promotor v. Pollard,* 628 F.3d 878, 887-88 (7th Cir. 2010). Because Lockhart procedurally defaulted his ineffective assistance of appellate counsel claim and petitioners do not have a constitutional right to counsel in collateral proceedings, the Court turns to whether Lockhart's trial counsel's ineffectiveness caused his procedurally default. *See id.*; *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004); 28 U.S.C. § 2254(i). As discussed in detail below, Lockhart has failed to establish that his trial counsel was constitutionally ineffective, and thus trial counsel's performance cannot fulfill the "cause" requirement under the cause and prejudice exception to his procedurally defaulted claims. *See Promotor,* 628 F.3d at 887-88; *McGee,* 593 F.3d at 563-64.

        **2.**    **Miscarriage of Justice Exception**

The "fundamental miscarriage of justice exception" concerns actual innocence and provides a gateway for the Court to review the merits of Lockhart's procedurally defaulted claims. *See Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). "The fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Smith v.*

13

*McKee,* 598 F.3d 374, 387-88 (7th Cir. 2010) (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). A petitioner must support his actual innocence allegations "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324; *Woods v. Schwartz,* 589 F.3d 368, 377 (7th Cir. 2009). "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005). Because this type of evidence is unavailable in the vast majority of cases, actual innocence claims are rarely successful. *See Schlup,* 513 U.S. at 324; *see, e.g., Smith,* 598 F.3d at 387-88.

Here, Lockhart has not provided the Court with any "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Instead, he argues that it would be a miscarriage of justice if the Court did not consider the merits of his procedurally defaulted arguments. He also contends that if his trial counsel had done additional research, counsel could have rebutted the State's motive theory and impeached his cell-mate's testimony. Rebutting the State's motive theory and additional impeachment evidence against the State's witness, however, concern Lockhart's legal innocence of the criminal charges against him, not his actual innocence as required under the miscarriage of justice exception. *See id.* at 314-15; *Britz v. Cowan,* 192 F.3d 1101, 1103 (7th Cir. 1999). As such, Lockhart cannot prevail under the miscarriage of justice exception, and therefore, the Court is barred from reviewing the merits of his

procedurally defaulted claims. *See See McGee,* 593 F.3d at 565; *Johnson,* 559 F.3d at 752.

## II. Confrontation Clause Claim

Relying on *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), Lockhart contends that he was denied his rights under the Confrontation Clause because the trial court admitted into evidence McClendon's testimonial hearsay statements even though McClendon could not recall the events recounted in these statements. Put differently, Lockhart argues that McClendon was not available for cross-examination at his trial. The Supreme Court decided *Crawford* approximately two years after Lockhart's trial and one year after the trial court sentenced him. Accordingly, the "holding of *Crawford* cannot be considered settled Supreme Court precedent for the purposes of habeas corpus if the Supreme Court had not yet decided the case." *Smith v. McKee,* 598 F.3d 374, 387 (7th Cir. 2010). Meanwhile, any argument that Lockhart was denied his rights in violation of 725 ILCS 5/115-10.2 is not cognizable on habeas review because any such challenge does not involve a federal issue. *See Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim presents no federal issue at all.") (quotation omitted). Therefore, the Court denies Lockhart's habeas claim that relies upon the Supreme Court's decision in *Crawford.*

## III. Ineffective Assistance of Trial Counsel Claim

Lockhart also maintains that his trial counsel provided constitutionally ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. To establish constitutionally ineffective assistance of counsel, Lockhart must show that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for

15

counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Lockhart fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant ...."); *see also United States v. Taylor,* 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance.").

In his habeas petition, Lockhart argues that his trial counsel was ineffective for failing to object to him being forced to wear the stun belt and that this requirement prevented him from testifying in his own defense. In addressing this argument, the Illinois Appellate Court correctly followed the *Strickland* prejudice prong in concluding that Lockhart "was not prejudiced by the failure of his trial counsel to object to the use of th stun belt" because he "told the trial judge that he did not testify based on advice of counsel. His decision was made because of his attorney's advice, not because he had to wear the stun belt." (Ex. I, *People v. Lockhart,* No. 3-06-0084, at *9-10 (Ill.App.Ct. 2007)). Moreover, the Illinois Appellate Court concluded that "the evidence against Lockhart was overwhelming. Thus, Lockhart failed to show he was prejudiced by counsel's failure to object to the use of the stun belt." (*Id.*)

The Court would be hard-pressed to conclude that the Illinois Appellate Court unreasonably applied *Strickland* to the facts of this case in concluding that Lockhart failed to establish that he was prejudiced by counsel's failure to object to the use of the stun belt. *See Williams,* 529 U.S. at 407. In other words, the Illinois Appellate Court's decision is objectively

reasonable because it is consistent with the facts and circumstances of the case. *See Williams v. Thurmer,* 561 F.3d at 746. Specifically, there was overwhelming trial evidence of Lockhart's guilt, including the detectives' testimony of his inconsistent statements concerning the day of Delores Bland's murder; his cell-mate's testimony that Lockhart had told him the details of the crimes, including that he set up the crime scene to look like a residential burglary even though the perpetrators were there to steal the Blands' guns; and McClendon's prior testimony that Lockhart and Keith Jr. approached him and attempted to sell him guns. Also, McClendon testified that Lockhart told him that he was with Scott and Keith Jr. when Scott killed Delores Bland and that they had gone to the Blands' house to steal guns. Based on this evidence, the Illinois Appellate Court's conclusion that Lockhart did not establish prejudice under the *Strickland* prejudice prong is simply not "well outside the boundaries of permissible differences of opinion." *Bennett,* 592 F.3d at 790 (citation omitted). Thus, Lockhart's ineffective assistance of counsel claim based on trial counsel's failure to object to the stun belt fails.

## IV.     Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Lockhart a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of

appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El,* 537 U.S. at 336; *Promotor v. Pollard*, 628 F.3d 878, 889 (7th Cir. 2010). Under this standard, Lockhart must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the Court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

Here, jurists of reason would find not find it debatable that Lockhart's habeas petition should have been resolved in a different way. *See Miller-El,* 537 U.S. at 336. As discussed, there was overwhelming evidence of Lockhart's guilt, and thus his *Strickland* claim is without merit. Also, Lockhart's claim based on the Supreme Court's decision in *Crawford* is equally unavailing because *Crawford* was not decided until after his trial. *See Smith,* 598 F.3d at 387. As to Lockhart's procedurally defaulted claims, he has failed to demonstrate that jurists of reason would find it debatable that the Court was incorrect in its procedural rulings, especially because he failed to establish any exception to his procedural default. *See Slack,* 529 U.S. at 485. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Lockhart's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). Also, the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

Dated: June 9, 2011

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**